# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SULLENA STATON,

Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA; DEBRA L. BOGEN, in her official capacity as Secretary of the Pennsylvania Department of Health; JEFFERSON HEALTH-ABINGTON; and JEFFERSON HEALTH NETWORK,

**Defendants.**

Case No. ________________

## COMPLAINT

### INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and damages to redress the ongoing violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, and for breach of contract under Pennsylvania law. This action seeks to vindicate the right of a woman to the disposition of her own body and its products, specifically her placenta, after childbirth.

2. Plaintiff Sullena Staton like many women, holds a deep personal, cultural, and spiritual connection to her placenta. She contracted with Defendant Jefferson Health-Abington to take her placenta home after the birth of her son. Jefferson Health-Abington, however, relying directly on Pennsylvania's medical waste regulation that mandates placenta disposal, violated this agreement and Staton's constitutional rights by disposing of her placenta as medical waste. Consequently, causing Staton significant harm and infringing upon her fundamental rights to privacy, bodily autonomy, and self-determination.

3. This case challenges both the Commonwealth of Pennsylvania's regulation that creates a state-sanctioned system enabling hospitals to violate patients' constitutional rights with impunity, and the specific breach of contract by Jefferson Health when it disposed of Staton's placenta in direct reliance on state law authorization. Upon information and belief, but for Pennsylvania's regulation classifying placentas as mandatory medical waste, Jefferson Health would have honored its contractual obligation to release the placenta to Staton.

4. Pennsylvania continues to enforce its unconstitutional regulations, creating ongoing violations of constitutional rights and enabling hospitals to breach placenta retention contracts with impunity. This continuing violation of federal constitutional rights provides an ongoing basis for relief regardless of when the initial harm occurred.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §1983, as this action arises under the Constitution and laws of the United States.

6. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

7. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

9. Plaintiff Sullena Staton ("Plaintiff" or 'Staton"), is an adult citizen of the United States and a resident of Montgomery County in the Commonwealth of Pennsylvania.

10. Defendant Commonwealth of Pennsylvania is a sovereign state that has enacted and actively enforces 28 Pa. Code § 501.84, which classifies placentas as pathological and bacteriological waste subject to mandatory disposal.

11. Defendant Dr. Debra L. Bogen is sued in her official capacity as Secretary of the Pennsylvania Department of Health, the state agency responsible for enforcing medical waste regulations, licensing hospitals, and ensuring compliance with 28 Pa. Code § 501.84. At all relevant times, the acting Secretary of the Pennsylvania Department of Health has acted under color of state law within the meaning of § 42 U.S.C. 1983

12. Defendant Jefferson Health-Abington (“Hospital” or “Jefferson”), is a Pennsylvania non-profit corporation with its principal place of business in Abington, Pennsylvania. It is a hospital that provides medical services, including labor and delivery services, and operates under Pennsylvania's medical waste regulations and state licensing requirements.

13. Defendant Jefferson Health Network (“Jefferson Health”) is a Pennsylvania non-profit corporation and is the parent company of Jefferson Health-Abington. Upon information and belief, Jefferson Health Network establishes the policies and procedures for its subsidiary hospitals, including Jefferson Health-Abington, in compliance with Pennsylvania state regulations.

## FACTUAL ALLEGATIONS

14. On or about August 22, 2021, Plaintiff Sullena Staton, then pregnant with her son, entered into a written agreement with Jefferson Health for the retainment of her placenta through Jefferson Health’s labor and delivery services.

15. Prior to the birth of her son, Staton informed the hospital staff of her desire to take her placenta home with her after the birth. She holds a deep personal, cultural, and spiritual belief in the significance of the placenta and wished to honor it in a manner consistent with her beliefs.

16. In accordance with Jefferson’s policy and procedure, Staton signed a "Patient Specimen Release Form" provided by the Jefferson. The form, dated August 22, 2021, explicitly states that the "PLACENTA" is to be released to the patient.

17. On August 23, 2021, Staton gave birth to a healthy baby boy.

18. Shortly after her son was delivered, Staton overheard a nurse, employed by Jefferson, mention the word "placenta." When Staton inquired, the nurse stated that the doctor had instructed the hospital staff "not to take it to the lab." Staton confirmed with the nurse that this was correct because she wanted to keep her placenta pursuant to the Patient Release Form.

19. Shortly thereafter, Staton asked her nurse where her placenta was, and the nurse responded that she did not know. The nurse then informed Ms. Staton that the placenta had already been taken away in a bucket-like storage container.

20. When Staton reiterated that she had signed a contract, to keep her placenta, the nurse inquired as to why Staton wanted her placenta. After Staton explained the reasons for retaining her placenta, she also reminded the nurse that Staton and Jefferson had agreed to release the placenta directly to Staton. However, the nurse informed Staton that a powder had already been poured on top of the placenta.

21. Upon information and belief, Staton subsequently learned that the pouring of the powder rendered the placenta damaged and irretrievable.

22. Staton as of the filing of this Complaint, only has one child.

23. Over three years later, since the incident, Staton remains in therapy for the above-mentioned violations of her rights and the material breach of the agreement between the parties.

24. Upon information and belief, the placenta was disposed of as medical waste pursuant to 28 Pa. Code § 501.84 and Jefferson Health's policies that incorporate Pennsylvania's medical waste regulations by reference.

25. Upon information and belief, Jefferson Health's staff were trained that Pennsylvania law requires placenta disposal as medical waste, and that the hospital could face regulatory sanctions for failing to comply with state waste disposal requirements.

26. Upon information and belief, Jefferson Health's policies and procedures manual incorporates 28 Pa. Code § 501.84 by reference and instructs staff that placentas must be disposed of as pathological waste in compliance with state law.

27. Upon information and belief, but for Pennsylvania's regulation mandating placenta disposal as medical waste, Jefferson Health would have honored its contractual obligation to release the placenta to Staton, as evidenced by the hospital's willingness to provide and accept the signed release form.

PLACENTA VALUATION AND IRREPLACEABLE LOSS

28. The placenta held unique, irreplaceable personal, cultural and spiritual value to Staton that cannot be measured by ordinary standards.

29. Staton's placenta constituted a sacred artifact and family heirloom that she intended to preserve as a permanent memento of her child's birth and to use in cultural and spiritual practices central to her beliefs.

30. The placenta was irreplaceable and unique property that cannot be substituted, replaced, or obtained elsewhere, as it was the specific product of Staton's pregnancy and childbirth.

31. No substitute or replacement exists for Plaintiff's specific placenta, making standard market value measures inadequate and inappropriate for determining damages.

32. Staton's valuation of her placenta is based on its irreplaceable significance to her family traditions, cultural practices, and spiritual beliefs, similar to family photographs, religious artifacts, or other items of purely personal significance.

33. Staton is entitled to establish the value of her placenta based on its personal, cultural, and spiritual significance to her, as recognized by law for unique and irreplaceable personal property.

34. The loss of her irreplaceable placenta has caused Staton damages in an amount to be established at trial based on its unique personal value to her.

## ONGOING HARM

35. Jefferson's actions have caused Staton ongoing harm, including continued therapy and emotional distress that persists to this day.

36. On September 1, 2021, Staton sent an email complaint to Jefferson, detailing the violation, the harm it caused and if Jefferson was able to locate her placenta.

37. On October 1, 2021, Jefferson sent a letter to Staton acknowledging that there was an investigation due to her concerns and concluding that her placenta was unable to be located.

38. Staton did not discover the full extent of her legal claims until consulting with counsel who identified the constitutional and contract theories of liability, triggering the discovery rule.

39. Pennsylvania's regulation continues to violate constitutional rights daily through its ongoing enforcement, creating a continuing violation that provides an ongoing basis for constitutional claims regardless of when the initial harm occurred.

40. The constitutional violations are ongoing and continuing as Pennsylvania actively enforces the challenged regulation against women seeking to retain their placentas, creating new violations each day the regulation remains in effect.

PENNSYLVANIA'S REGULATORY FRAMEWORK AND STATE-CREATED DANGER

41. Pennsylvania Code § 501.84 provides: "Pathological and bacteriological waste, surgical and obstetrical wastes, contaminated wastes, and similar materials shall be incinerated on the premises or disposed of by a method approved by the Department of Environmental Resources and in compliance with local regulations."

42. This regulation classifies placentas as "pathological waste" subject to mandatory disposal, without exception for patients who wish to retain their placentas for personal, cultural, or religious purposes.

43. The Pennsylvania Department of Health actively enforces this regulation through hospital licensing, inspection, and accreditation processes.

44. Pennsylvania provides legal immunity and regulatory protection to hospitals that comply with state medical waste disposal requirements, effectively encouraging hospitals to dispose of placentas regardless of patient wishes or contractual agreements.

45. Pennsylvania's regulatory framework creates a state-sanctioned system that enables and encourages hospitals to violate patients' constitutional rights with impunity by:

a. Removing legal protections for placenta retention;

b. Providing regulatory immunity for hospitals that dispose of placentas against patient wishes;

c. Creating financial and regulatory incentives for hospitals to treat placentas as waste rather than honoring patient autonomy;

d. Establishing a legal environment hostile to religious and cultural practices involving placentas.

46. Unlike states such as Texas, Oregon, and Hawaii, Pennsylvania has not enacted legislation recognizing a patient's right to retain their placenta after birth, despite the availability of safe protocols for placenta retention.

47. Pennsylvania's regulation operates to deny patients any legal right to their placentas and authorizes hospitals to dispose of them as waste regardless of the patient's wishes, contractual agreements, or constitutional rights.

48. The state-created danger doctrine applies because Pennsylvania has created a legal framework that affirmatively places constitutional rights in danger by removing protections and providing immunity for violations.

## **CLAIMS FOR RELIEF**

### **COUNT I**

VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

*(DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS)*
*(Against Commonwealth of Pennsylvania and Dr. Debra L. Bogen)*

49. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

50. This claim id brought pursuant to 42 U.S.C. § 1983 against Defendants who, acting under color of state law, have deprived Staton of rights secured by the Constitution and laws of the United States.

51. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

52. Staton has a constitutionally protected liberty interest in her own body and the right to make decisions about her reproductive health and its products. This right is grounded in the constitutional right to privacy and bodily autonomy, as recognized in cases such as *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Eisenstadt v. Baird*, 405 U.S. 438 (1972), and *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990).

53. The right to make autonomous decisions about one's placenta is a fundamental aspect of reproductive liberty and bodily integrity that is deeply rooted in personal autonomy and privacy.

54. Pennsylvania Code § 501.84, as applied to deny patients the right to retain their placentas, violates substantive due process by infringing upon this fundamental liberty interest without a compelling state justification.

55. The regulation is not narrowly tailored to serve any compelling state interest, as it makes no distinction between potentially hazardous placentas and healthy placentas that pose no public health risk, and as demonstrated by other states that successfully protect public health while allowing placenta retention.

56. Pennsylvania's ongoing enforcement of this unconstitutional regulation creates a continuing violation of federal constitutional rights that provides an ongoing basis for relief under § 1983.

57. Alternatively, Pennsylvania has violated the state-created danger doctrine by affirmatively creating a legal framework that places constitutional rights in jeopardy by removing protections and encouraging violations through regulatory immunity.

58. Defendants, acting under color of state law, have violated Staton's constitutional rights in violation of 42 U.S.C. § 1983.

59. As a direct and proximate result of Defendant Pennsylvania's violation of § 1983 and the Fourteenth Amendment, Staton has suffered and will continue to suffer irreparable harm, including violation of her fundamental rights.

**COUNT II**

VIOLATION OF 42 U.S.C. § 1983 AND THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

*(FREE EXERCISE OF RELIGION)*

*(Against Commonwealth of Pennsylvania and Dr. Debra L. Bogen)*

60. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

61. This claim is brought pursuant to 42 U.S.C. § 1983 against Defendants who, acting under color of state law, have deprived Staton of her rights secured by the Constitution and laws of the United States.

62. The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits the government from making any law "prohibiting the free exercise" of religion.

63. Staton's desire to retain her placenta is based, in part, on her sincerely held personal, cultural, and spiritual beliefs. The placenta holds deep significance for her and her family, and she intended to perform certain rituals and practices with it that are central to her beliefs.

64. Pennsylvania Code § 501.84, as applied to deny patients the right to retain their placentas, substantially burdens the free exercise of religion by preventing individuals from engaging in religious and spiritual practices involving their placentas.

65. The regulation is not the least restrictive means of achieving any compelling government interest, as other states have successfully protected public health while allowing placenta retention through reasonable safety protocols.

66. Pennsylvania's ongoing enforcement creates a continuing violation of religious liberty that provides an ongoing basis for relief under § 1983.

67. Pennsylvania has created a state-sanctioned system that systematically burdens religious exercise by providing legal immunity to hospitals that violate patients' religious practices and removing legal protections for religious observance.

68. Defendants, acting under color of state law, have violated Staton's constitutional rights in violation of 42 U.S.C. § 1983.

69. As a direct and proximate result of Pennsylvania's unconstitutional regulation, Plaintiff and class members have suffered and will continue to suffer irreparable harm, including violation of their religious liberty.

**COUNT III**

BREACH OF CONTRACT

*(Against Jefferson Health-Abington and Jefferson Health Network)*

70. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

71. The Patient Specimen Release Form signed by Staton and accepted by Defendant Jefferson Health-Abington constitutes a valid and enforceable contract under Pennsylvania law.

72. The contract's terms were clear and unambiguous: The Hospital agreed to release the placenta to Staton.

73. Staton fully performed her obligations under the contract.

74. Defendants Jefferson Health-Abington and Jefferson Health Network breached the contract by failing to release the placenta to Staton and instead disposing of it as medical waste in direct reliance on Pennsylvania Code § 501.84.

75. Upon information and belief, but for Pennsylvania's regulation mandating placenta disposal as medical waste, Defendants would have honored their contractual obligations. Specifically, to release the placenta to Staton, as evidenced by their willingness to enter into the agreement and provide the release form.

76. Defendants cannot rely on Pennsylvania Code § 501.84 as a defense to their breach of contract, as they voluntarily entered into the agreement to release the placenta and accepted Staton's consideration.

77. Pennsylvania's regulation enabled and encouraged Defendants' breach by providing regulatory immunity and removing legal consequences for violating patient contracts regarding placenta retention.

78. The breach of contract claim is subject to Pennsylvania's four-year statute of limitations under 42 Pa.C.S. § 5525, and this action is timely filed within that period.

79. As a direct and proximate result of Defendants' breach of contract, enabled by Pennsylvania's regulatory framework, Staton has suffered damages equal to the unique personal, cultural, and spiritual value of her irreplaceable placenta, in an amount to be established at trial.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Sullena Staton respectfully requests that this Court enter judgment in her favor and against the Defendants, and grant the following relief:**

A. A declaration that Pennsylvania Code § 501.84, as applied to deny patients the right to retain their placentas, violates the First and Fourteenth Amendments to the United States Constitution;

B. A declaration that women have a constitutionally protected liberty interest in retaining their placentas after birth;

C. An injunction prohibiting the Commonwealth of Pennsylvania and the Secretary of the Department of Health from enforcing Pennsylvania Code § 501.84 in a manner that denies patients the right to retain their placentas for personal, cultural, or religious purposes;

D. An injunction requiring Pennsylvania to adopt regulations similar to those in Texas, Oregon, and Hawaii that protect patients' rights to retain their placentas while maintaining appropriate health and safety standards;

E. An injunction requiring Pennsylvania to provide guidance to hospitals protecting patient rights and prohibiting the use of state medical waste regulations as justification for breaching placenta retention contracts;

F. Compensatory and nominal damages against Jefferson Health Defendants equal to the unique personal, cultural, and spiritual value of Plaintiff's irreplaceable placenta, in an amount to be determined at trial;

G. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H. Such other and further relief as the Court deems just and proper.

Date: August 25, 2025

**Respectfully submitted,**

*/s/ Walter A. Bernard, Esquire*
Walter A. Bernard, Esquire
321994

LAW OFFICES OF WALTER A. BERNARD
840 1st Ave Suite 400
King of Prussia, PA 19406
(610) 466-5480
walt@waltbernardlaw.com
*Attorneys for Plaintiff Sullena Staton*

**JURY TRIAL DEMANDED**