# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SULLENA STATON,

Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA; DEBRA L. BOGEN, in her official capacity as Secretary of the Pennsylvania Department of Health; JEFFERSON HEALTH-ABINGTON; and JEFFERSON HEALTH NETWORK,

Defendants.

Case No. 2:25-cv-04866-HB

Honorable Harvey Bartle III

## FIRST AMENDED CIVIL COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff Sullena Staton, by and through her undersigned counsel, brings this First Amended Civil Complaint for declaratory, injunctive, and monetary relief against Defendants and alleges as follows:

## INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the laws of the Commonwealth of Pennsylvania to challenge the constitutionality of Pennsylvania's regulatory scheme mandating the disposal of human placentas as medical waste, and to recover damages for the Defendants' unlawful disposal of Plaintiff's placenta in violation of a binding contract.

2. Plaintiff Sullena Staton gave birth to her son on August 22, 2021, at Jefferson Health-Abington Hospital. Prior to the birth, Staton executed a written contract with the hospital to have her placenta released to her for personal, cultural, and spiritual reasons. Despite this binding agreement, upon information and belief, the hospital disposed of her placenta pursuant to a Pennsylvania state regulation that classifies placentas as pathological waste requiring disposal.

3. This action seeks to vindicate Staton's fundamental constitutional rights to bodily autonomy, privacy, and the free exercise of her cultural and spiritual beliefs, which are violated by Pennsylvania's ongoing enforcement of its unconstitutional regulation. It further seeks to recover compensatory and consequential damages from Jefferson Health Defendants for their breach of contract.

## **JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

5. This Court has supplemental jurisdiction over the state law breach of contract claim pursuant to 28 U.S.C. § 1367, as it arises from the same common nucleus of operative facts as the federal claims.

6. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and Defendants reside or transact business within this district.

## PARTIES

7. Plaintiff Sullena Staton ("Plaintiff" or "Ms. Staton") is an adult individual and a citizen of the Commonwealth of Pennsylvania.

8. Defendant Commonwealth of Pennsylvania ("Commonwealth") is a state of the United States and is responsible for the enactment and enforcement of the regulations at issue in this case. The Commonwealth is named solely for purposes of declaratory relief challenging the constitutionality of its regulations.

9. Defendant Dr. Debra L. Bogen is the Secretary of the Pennsylvania Department of Health. She is sued solely in her official capacity for prospective declaratory and injunctive relief pursuant to the doctrine established in *Ex Parte Young*, 209 U.S. 123 (1908). At all relevant times, Dr. Bogen has acted under color of state law within the meaning of 42 U.S.C. § 1983. No monetary damages are sought against Dr. Bogen in her official capacity.

10. Defendant Jefferson Health-Abington Hospital ("Hospital" or "Jefferson Health") is a Pennsylvania non-profit corporation with its principal place of business in Abington, Pennsylvania. It is a licensed general hospital subject to regulation by the Pennsylvania Department of Health under Title 28 of the Pennsylvania Code.

11. Defendant Jefferson Health Network is a Pennsylvania non-profit corporation that owns and operates Jefferson Health-Abington Hospital and is vicariously liable for the acts and omissions of its agents and employees.

## FACTUAL ALLEGATIONS

12. On August 22, 2021, Plaintiff Sullena Staton was admitted to Jefferson Health-Abington Hospital for the labor and delivery of her son.

13. Prior to the delivery, Ms. Staton informed hospital staff of her sincere desire to retain her placenta for personal, cultural, and spiritual purposes, including nutritional and ceremonial use consistent with her cultural beliefs.

14. In response to her request, hospital staff provided Staton with a "Specimen/Limb/Prosthesis Release" form. Ms. Staton carefully reviewed and executed this form, which constituted a valid and binding contract between her and the hospital for the release of her placenta to her following the birth.

15. On August 23, 2021, after giving birth to her son, Ms. Staton and her family made repeated requests to the Hospital staff for the return of her placenta as agreed. Ms. Staton overheard a nurse mention the word “placenta” and a doctor’s instruction “not to take it to the lab.”

16. When Ms. Staton inquired about her placenta, a nurse stated she did not know where the placenta was and that it had been had been removed in a bucket-like storage container. The nurse inappropriately questioned Ms. Staton as to why she wanted her placenta.

17. Ms. Staton was further informed by Hospital staff that a chemical powder had already been poured on top of the placenta, rendering it permanently damaged and irretrievable.

18. The Hospital's failure to release the placenta to Ms. Staton constituted a direct and willful breach of the signed release form.

## THE UNCONSTITUTIONAL REGULATORY SCHEME

19. 28 Pa. Code § 147.74, provides: "*Pathological and bacteriological wastes, surgical and obstetrical wastes, contaminated wastes and similar materials shall be incinerated on the premises or disposed of by a method approved by the Department of Environmental Protection and in compliance with local regulations.*" See 28 Pa. Code § 147.74.

20. This regulation classifies placentas as "obstetrical wastes" subject to mandatory disposal. The use of the word "shall" imposes an affirmative, mandatory duty upon hospitals to destroy all materials falling within the regulation's scope. The regulation contains no exception for patient consent, no opt-out mechanism, no reclassification procedure, and no pathway by which a patient may claim her placenta before or after it is classified as waste.

21. To the extent the Commonwealth contends that 28 Pa. Code § 147.74 does not prevent the retention of placentas by patients, this contention is belied by the regulation's own mandatory language and by its operation in practice. A regulation that commands hospitals to destroy obstetrical materials by using the mandatory "shall", while providing no exception, no accommodation, and no procedural mechanism for patient retention, operates as a de facto prohibition on retention.

22. The Commonwealth cannot simultaneously maintain that 28 Pa. Code § 147.74 comprehensively governs the disposal of all obstetrical wastes and thereby justifying the regulation's existence, while also contending that the regulation does not address patient retention

and therefore imposes no burden on patients' constitutional rights. If the regulation is comprehensive enough to mandate the destruction of all obstetrical wastes without exception, then its silence on patient retention is a deliberate exclusion that operates as a prohibition. If the regulation is not comprehensive and does not govern patient-claimed placentas, then Jefferson Health had no regulatory basis for destroying Plaintiff's placenta, and the breach of contract was entirely without legal justification.

23. The strongest evidence that 28 Pa. Code § 147.74 operates as a de facto prohibition on placenta retention is the conduct of the regulated entity itself. When Ms. Staton presented a signed consent form expressly authorizing the release of her placenta, Jefferson Health-Abington Hospital destroyed the placenta anyway. Hospital staff did not consult any exception to the regulation, because none exists. They did not follow any procedure for honoring patient retention requests, because no such procedure has been established. They did not seek guidance from the Department of Health, because no guidance has been issued. The Hospital's conduct demonstrates that the regulation, as understood and applied by the institutions it governs, operates as an absolute mandate to destroy all obstetrical materials without regard to patient consent.

24. The regulatory framework created by 28 Pa. Code § 147.74 systematically incentivizes destruction over retention. Hospitals face potential regulatory consequences for failing to dispose of materials classified as obstetrical waste, but face no regulatory consequences whatsoever for ignoring a patient's signed consent form to retain her placenta. This asymmetry creates a state-created danger to patients' constitutional rights by ensuring that, in every case of conflict between a patient's retention request and the disposal mandate, the disposal mandate prevails.

25. The complete absence of any procedural mechanism for placenta retention renders any theoretical right to retention illusory. The Commonwealth has not enacted any notice requirement informing patients of their right to claim their placentas; any standardized form or procedure for exercising such a right; any training requirement for hospital staff on handling retention requests; any appeal or grievance mechanism for patients whose retention requests are denied; or any guidance whatsoever to hospitals on how to reconcile patient retention requests with the mandatory disposal language of § 147.74. This regulatory vacuum effectively operates as a de facto prohibition.

26. Multiple other states, including Texas (Health & Safety Code § 241.013), Oregon (ORS 97.982), and Hawaii (HRS § 321-30.5), have enacted laws that expressly permit women to retain their placentas while maintaining public health standards. These states demonstrate that placenta retention and public health are not mutually exclusive, and that Pennsylvania's blanket regulatory scheme, which provides no mechanism for retention, is neither the least restrictive means nor narrowly tailored to serve any legitimate public health interest.

27. This regulation, on its face and as applied, creates an unconstitutional infringement on the fundamental rights of women in Pennsylvania including Ms. Staton.

## TIMELINESS OF THE ACTION

28. All claims herein are timely filed. The breach of contract claim is subject to a four-year statute of limitations under 42 Pa.C.S. § 5525. The cause of action accrued on August 23, 2021, establishing a statutory deadline of August 23, 2025. As August 23, 2025, fell on a Saturday, the

filing period was automatically extended to the next business day pursuant to Federal Rule of Civil Procedure 6(a)(1)(C). This action, filed on Monday, August 25, 2025, is therefore timely.

29. The claims for prospective declaratory and injunctive relief under 42 U.S.C. § 1983 are also timely under the continuing violation doctrine, as the Commonwealth's ongoing enforcement of the challenged regulation continues a continuing constitutional violation.

CONTINUING VIOLATION AND ELEVENTH AMENDMENT

30. The Commonwealth's ongoing enforcement of 28 Pa. Code § 147.74 constitutes a continuing violation of Ms. Staton's constitutional rights. Each day the regulation remains in effect without any procedural mechanism for patients to claim their placentas creates a new and independent constitutional violation.

31. Ms. Staton seeks prospective declaratory and injunctive relief against Defendant Dr. Bogen in her official capacity pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), which permits suits against state officials in their official capacity to enjoin ongoing violations of federal constitutional rights. Such prospective relief is not subject to the Eleventh Amendment bar applicable to retroactive monetary relief against the state.

32. Ms. Staton expressly does not seek monetary damages, including nominal damages against the Commonwealth of Pennsylvania or Dr. Bogen in her official capacity. The Eleventh Amendment bars all monetary relief against the state and state officials sued in their official capacity, and Ms. Staton acknowledges this limitation.

33. Attorney fees sought pursuant to 42 U.S.C. § 1988 are not barred by the Eleventh Amendment when awarded as part of a successful action for prospective relief. *Hutto v. Finney*, 437 U.S.678 (1978).

## THE VALUE OF PLAINTIFF'S PLACENTA FOR CONTRACT DAMAGES

34. The placenta held unique, irreplaceable personal, cultural, and spiritual value to Ms. Staton that cannot be measured by ordinary commercial standards.

35. The placenta constituted a sacred artifact and family keepsake that Ms. Staton intended to preserve as a permanent memento of her child’s birth, consistent with her sincerely held cultural and spiritual beliefs.

36. No substitute or replacement exists for Ms. Staton’s specific placenta, making standard market value measures inadequate and inappropriate.

37. Ms. Staton is entitled to establish the value of her placenta based on its personal, cultural, and spiritual significance to her, as recognized by law for unique and irreplaceable personal property.

## COUNT I:
## VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT
DUE PROCESS AND LIBERTY INTERESTS
(*Sullena Staton v. Commonwealth of Pennsylvania and Dr. Debra L. Bogen, in her Official Capacity*)

38. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

39. The Fourteenth Amendment to the United States Constitution protects fundamental rights to privacy, bodily autonomy and liberty. These protections encompass the right to make intimate decisions regarding one’s own body and reproductive choices.

40. The placenta is a unique organ produced by a woman's own body during pregnancy. The decision to retain one's own placenta is a fundamental aspect of these protected liberty interest in bodily autonomy and reproductive choice.

41. By mandating the disposal of placentas as obstetrical waste, and by failing to provide notice, procedure, or mechanism for patients to exercise their right to claim their placentas before classification as waste, 28 Pa. Code § 147.74 and its attendant regulatory scheme unconstitutionally infringe upon these fundamental rights without a compelling state interest and without being narrowly tailored to serve any legitimate governmental purpose.

42. The complete absence of any procedural safeguards including any notice to patients that they may claim their placentas, any form or process for doing so, or any hospital for honoring such claims, renders any theoretical right to placenta retention illusory and constitutes an independent violation of procedural due process under the Fourteenth Amendment.

43. To the extent the Commonwealth contends that the regulation does not prohibit placenta retention, the absence of any procedural mechanism for exercising that right independently violates procedural due process. A right without any process for its exercise is no right at all. The Commonwealth's failure to establish any procedure by which patients may claim their placentas, despite maintaining a mandatory disposal regime, deprives patients of a protected liberty interest without due process of law.

44. Multiple other states, including Texas, Oregon, and Hawaii, have enacted laws permitting women to retain their placentas while maintaining public health standards, demonstrating that

Pennsylvania's blanket regulatory scheme is not the least restrictive means of achieving any legitimate public health interest.

45. Defendants, acting under color of state law, have violated Ms. Staton's constitutional rights in violation of 42 U.S.C. § 1983. The Fourteenth Amendment's Due Process Clause protects an individual's fundamental rights to privacy, bodily autonomy, and the right to make intimate decisions about one's own body, family, and reproductive life. See *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990).

46. As a direct and proximate result of Defendants' ongoing constitutional violations, Ms. Staton has suffered and continues to suffer irreparable harm, entitled her to declaratory and injunctive relief.

**COUNT II: VIOLATION OF 42 U.S.C. § 1983 AND THE FIRST AMENDMENT**
FREE EXERCISE OF RELIGION AND CULTURAL PRACTICES
(*Sullena Staton v. Commonwealth of Pennsylvania and Dr. Debra L. Bogen, in her Official Capacity*)

47. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

48. The First Amendment to the United States Constitution protects the free exercise of sincerely held religious, cultural and spiritual beliefs.

49. For Ms. Staton, the retention of her placenta was central to her sincerely held cultural and spiritual beliefs, including the use of the placenta for nutritional and ceremonial purposes consistent with her traditions.

50. By prohibiting Ms. Staton from retaining her placenta through the enforcement of 28 Pa. Code § 147.74 without any accommodation or exception, the Commonwealth of Pennsylvania has imposed a substantial burden on Ms. Staton's First Amendment right to the free exercise of her sincerely held beliefs.

51. This burden is not justified by a compelling governmental interest and is not the least restrictive means of achieving any legitimate state purpose.

52. Defendants, acting under the color of state law, have violated Ms. Staton's constitutional rights in violation of 42 U.S.C. § 1983.

53. As a direct and proximate result of Defendants' ongoing constitutional violations, Ms. Staton has suffered and continues to suffer irreparable harm entitling her to declaratory and injunctive relief.

THE ENFORCEABILITY OF THE PLACENTA RELEASE CONTRACT
AND THE WILLFUL NATURE OF THE BREACH

54. The contract between Ms. Staton and Jefferson Health-Abington Hospital is valid and enforceable. Any argument by the Jefferson Health Defendants that the contract is void ab initio fails as a matter of law for multiple, independent reasons.

55. First, Jefferson Health is equitably estopped from challenging the validity of a contract that it drafted, presented to Ms. Staton, and induced Ms. Staton to sign. A party that creates a contract and induces reliance upon it cannot later disclaim the contract's validity to avoid its own obligations.

56. Second, the contract does not require an illegal act. 28 Pa. Code § 147.74 governs the disposal of unclaimed "obstetrical wastes," not patient claimed property. The signed release form constituted Ms. Staton's express, pre-classified claim to her placenta. Since Ms. Staton claimed her placenta before it could be classified as waste, the placenta was never "unclaimed waste" to which the regulation could lawfully apply. The Hospital's contractual obligation was to honor Ms. Staton's property interest in her placenta.

57. Third, to the extent the regulation is found to prohibit the release of a claimed placenta, the regulation is unconsitutionl as set forth in Counts 1 and II of this Complaint. An unconstitutional regulation cannot serve as the basis for voiding a contract.

58. Fourth, if the regulation permits pre-classified claims, the contract with Jefferson Health was lawful and the breach was willful; if the regulation prohibits all placenta retention, the regulation is unconsitutionl and cannot voice the contracts. Under either interpretation, the contract remains enforceable.

59. Fifth, To the extent the Commonwealth contents that 28 Pa. Code §147.74 does not prevent placenta retention, then Jefferson Health had no regulatory basis whatsoever for destroying Ms. Staton's placenta. The Commonwealth's position that the regulation does not prohibit retention is an admission that the contract was lawful, that the Hospital's breach was entirely voluntary, and that no legal impossibility excuses Jefferson Health's failure to perform.

60. Sixth, because the regulation did not prohibit the release of a claimed placenta, Jefferson Health's breach was entirely willful and not compelled by law. The Hospital could have and was contractually obligated to release the placenta to Ms. Staton before classifying it as waste. Its

failure to do so was a deliberate choice, not a legal impossibility. Jefferson Health had no legal justification for its failure to perform under the contract.

**COUNT III: BREACH OF CONTRACT**

(*Sullena Staton v. Jefferson Health-Abington Hospital and Jefferson Health Network*)

61. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

62. The "Specimen/Limb/Prosthesis Release" form executed by Ms. Staton and Jefferson Health-Abington Hospital constituted a valid, binding, and enforceable contract for the release of Ms. Staton's placenta.

63. Ms. Staton fully performed her obligations under the contract.

64. Jefferson Health-Abington Hospital, acting as agent of Jefferson Health Network, materially breached this contract by failing and refusing to release the placenta to Ms. Staton as required by the agreement.

65. The breach was willful and deliberate, as hospital staff were aware of the signed release form and nonetheless disposed of the placenta without Ms. Staton's consent.

66. As a direct and foreseeable result of this breach, Ms. Staton has suffered substantial damages, including the loss of her unique, irreplaceable placenta and the personal, cultural, and spiritual value it held for her and her family.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sullena Staton respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

A. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that 28 Pa. Code § 147.74, as applied to the disposal of patient claimed placentas, violated the First and Fourteenth Amendments to the United States Constitution;

B. Enter a permanent injunction enjoining Defendant Dr. Debra L. Bogen, in her official capacity as Secretary of the Pennsylvania Department of Health, and her successors, agents, and employees, from enforcing 28 Pa. Code § 147.74 in a manner that prohibits women from retaining their placentas upon request;

C. Enter a permanent injunction requiring the Commonwealth of Pennsylvania, through the Department of Health, to establish procedural mechanisms including notice requirements, standardized forms and hospital protocols, by which patients may exercise their right to retain their placentas.

D. Award compensatory and consequential damages against Defendants Jefferson Health-Abington Hospital and Jefferson Health Network, jointly and severally, in an amount to be determined at trial, based on the unique personal, cultural and spiritual value of Ms. Staton's placenta;

E. Award reasonable attorney fees and costs against Defendant Dr. Debra L. Bogen in her official capacity pursuant to 42 U.S.C. § 1988;

F. Award pre-judgment and post-judgment interest as permitted by law;

G. Grant such other and further relief as the Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED**

Plaintiff Sullena Staton hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

*/s/ Walter A. Bernard, Esquire*
Walter A. Bernard, Esquire
PA ID 321994

**LAW OFFICES OF WALTER A. BERNARD**
840 1st Ave Suite 400
King of Prussia, PA 19406
Tel: (610) 466-5480
walt@waltbernardlaw.com
*Attorney for Plaintiff Sullena Staton*

Date: March 16, 2026