**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SULLENA STATON,<br><br>*Plaintiff*<br><br>V.<br><br>COMMONWEALTH OF PENNSYLVANIA;<br>DEBRA L. BOGEN, in her official capacity as Secretary of the Pennsylvania Department of Health;<br>JEFFERSON HEALTH-ABINGTON; and<br>JEFFERSON HEALTH NETWORK,<br><br>*Defendants* | : | CIVIL ACTION<br><br><br><br><br><br>NO. 2:25-cv-04866-HB |

**REPLY BRIEF IN SUPPORT OF AMENDED MOTION TO PRECLUDE CLAIM FOR EMOTIONAL DISTRESS DAMAGES RELATED TO BREACH OF CONTRACT CLAIM**

Defendants Jefferson Health-Abington and Jefferson Health Network hereby submit this Reply Brief in support of their Amended Motion to Preclude Claim for Emotional Distress Damages Related to Breach of Contract Claim, and precluding Plaintiff from asserting any such claim for damages for emotional distress and from introducing any evidence with respect to emotional distress damages at trial.

## I. INTRODUCTION

On September 25, 2026 Defendants filed an Amended Motion to Preclude Claim for Emotional Distress Damages Related to Breach of Contract Claim [“Amended Motion”]. Plaintiff filed a Response in Opposition to Defendant’s Amended Motion on October 7, 2026 (ECF# 59), with Declarations of Paster Jeffrey Knight, Ph.D. (ECF# 59-1) and Plaintiff Sullena Staton (ECF# 59-2) attached. Defendants incorporate their Amended Motion to Amend and Memorandum as if fully set forth herein.

## II. ARGUMENT

### A. Defendants' Amended Motion presents a legal question for this Court's resolution, not a factual dispute

Defendants' Amended Motion presents an issue of law, despite Plaintiff's attempts to create a factual issue by attaching Declarations to her Response. This Court need not defer a decision on Defendants' Amended Motion until discovery is complete, and no factual issues preclude this Court from deciding the legal question as to Plaintiff's ability to recover emotional distress damages relating to a breach of contract claim under Pennsylvania law.

The issues in the Amended Motion can be summarized as follows:

1. Whether Plaintiff should be precluded from asserting any claim for emotional distress damages relating to her breach of contract claim because Plaintiff did not plead a claim for emotional distress or related harm in her Second Amended Complaint?

2. Whether Plaintiff can recover emotional distress and other non-pecuniary damages for her breach of contract claim under Pennsylvania law because Pennsylvania has not adopted the Restatement (Second) of Contracts § 353 and they are generally unavailable, but if permitted, whether they are recoverable here since neither of the exceptions can be satisfied as Plaintiff does not allege any bodily injury or emotional distress accompanying bodily injury in her Second Amended Complaint; and, the breach of contract alleged – the Patient Specimen Release Form - is not "of such a kind that serious emotional disturbance was a particularly likely result"?

Put simply, resolution of Defendants' Amended Motion rests upon issues of law, not fact. The issue of whether the promise asserted by Plaintiff to release her placenta posed a particularly likely risk that a breach would result in serious emotional disturbance, is a matter of law to be determined by this Court. *See Castore v. Chase*, 17 Pa. D. & C.3d 104, 108 (C.P. 1980)(referring to the test in prior § 341 as "involv[ing] the type of contract under consideration," that it "must be of such a character that mental anguish is a reasonably foreseeable result caused by a breach," and disagreeing that this is aa factual issue because although " foreseeability is in most instances a question of fact, the qualifying or triggering condition involving this type of contract is a question of law."); *Gallagher v. Upper Darby Township*, 539 A.2d 463, 467 (Pa. Cmwlth. 1988)

(affirming summary judgment on assumpsit claim "inasmuch as no physical injury is alleged by Appellant and the failure to correctly diagnose a sewage blockage problem is not particularly likely to result in mental suffering or emotional distress, Appellant cannot, as a matter of law, recover damages from Snyder for those injuries."); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007)("[t]he question of whether a contract or breach is particularly likely to result in serious emotional disturbance is one of law, for the Court to decide.") (citing *Gallagher,* 539 A.2d 463).

Contrary to Plaintiff's argument, Defendants do not ask this Court to find "facts" regarding what information Plaintiff conveyed to Jefferson employees, and when, the "foreseeability" of serious distress from destroying the placenta, or the enforceability of the Patient Specimen Release Form. This Court may grant Defendant's motion irrespective of the fact that certain Jefferson witnesses have not been deposed. Only legal issues are involved, and Defendants are not forcing Plaintiff to "marshal" her proofs before discovery has closed.[1]

Additionally, while Plaintiff argues that she told the intake nurse that she wanted to keep her placenta for "personal and religious reasons" before signing the Patient Specimen Release Form, such prior conversations are subject to the parol evidence rule, which provides that terms cannot be added to or subtracted from a contract. "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (quoting *Gianni v.*

[1] Also, while Plaintiff cites to statements which she argues show that Jefferson's investigation "confirms" that it knew that she intended to keep her placenta, Plaintiff herself acknowledges that these citations "do not establish that staff knew her theology, and Ms. Staton does not claim they do." Response, p. 9.

*Russell & Co*., 126 A. 791, 792 (Pa. 1924) (citations omitted)).[2] Any testimony by Plaintiff that she conveyed "personal and religious" reasons to the intake nurse or others would be parol evidence, and cannot create a factual issue or alter the terms of the Specimen Form/"agreement." *Yocca*, 854 A.2d at 436-37 ("Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.")[3] Therefore, any alleged factual issue of Plaintiff's conversations with staff is irrelevant to disposition of this Amended Motion for this secondary reasons as well.

**B. This case does not fall within the exceptions to the Restatement (Second) of Contracts, § 353 as a matter of law**

Plaintiff argues that the test under the Restatement § 353, concerns the type of agreement or character of the promise, not the writing itself. However, Plaintiff cannot prevail under this argument, because a Patient Specimen Release Form is not one of the limited types of contracts identified in § 353, nor is it akin to such contracts. *See* Restat 2d of Contracts, § 353 (referring to "contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death.")

[2] Nor do any of the limited exceptions to the parol evidence rule apply. First, Plaintiff did not allege in her complaint that "a term was omitted from the contract because of fraud, accident, or mistake." *Id*., at 437 (citing *HCB Contractors v. Liberty Place Hotel Assocs.,* 652 A.2d 1278, 1279 (Pa. 1995)). Second, Plaintiff does not argue that any terms in the "contract" are ambiguous, therefore parol evidence is not admissible "to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Id.* (quoting *Estate of Herr*, 161 A.2d 32, 34 (Pa. 1960)). Also, to the extent that Plaintiff claims the Release Form is a contact, it is straightforward and unambiguous, therefore parol evidence is not admissible to clarify any purported ambiguity.

[3] Any alleged conversations that occurred after Plaintiff signed the Release Form are also irrelevant to this Amended Morion, because Plaintiff herself acknowledges that after the birth, and by the time she alerted the nurse that she wanted her placenta, it had been taken away, powder poured on it, and could not be retrieved.

Plaintiff attempts to draw comparisons with the burial contracts for the internment of human remains listed in § 353, arguing that the "quality" identified in the Restatement is "a promise concerning a unique physical thing, tied to one family, that cannot be performed again once the thing is gone." Response, p. 6. Plaintiff cites no legal authority supporting her particular characterization of the type of contract that might allow for emotional distress damages. The Restatement does not provide an exception where the promise concerns the destruction of an allegedly unique item instead of a fungible good or is a non-commercial contract, as Plaintiff attempts to argue.

Nor is the type or character of the promise the same in a Patent Specimen Release Form and a burial contract. Pennsylvania expressly recognizes factors such as the religious significance of the burial of human remains and burial sites and potential "outrage" to the sensibilities of persons that desecration may cause, through various civil and criminal statutes and case decisions.[4] By contrast, a placenta is considered a biological waste product in the medical industry, the disposal of which is regulated in this Commonwealth.[5] It also does not

---

[4] *See, e.g.,* 53 Pa. Stat. Ann. § 565, Cemetery or religious corporations or political subdivisions as trustees; bond (describing administration, maintenance, preservation, ornamentation or benefit of its cemetery or burial ground or the cemetery lots); 9 Pa. Stat. Ann. § 45 (regarding authorization of removal of dead bodies from burial grounds); 18 Pa. Cons. Stat. Ann. § 5509(a) &b ("[a] person commits a misdemeanor of the second degree if he: (1) intentionally desecrates any public monument or structure, or place of worship or burial…", and defining "desecrate" as — [d]efacing, damaging, polluting or otherwise physically mistreating in a way that the actor knows will outrage the sensibilities of persons likely to observe or discover the action"); 18 Pa. Cons. Stat. Ann. § 5510, Abuse of corpse ("Except as authorized by law, a person who treats a corpse in a way that he knows would outrage ordinary family sensibilities commits a misdemeanor of the second degree"); *Brnilovich v. St. George Indep. Serbian Orthodox Church*, 191 A. 655, 657 (Pa. 1937)(addressing the rights of persons whose relatives are interred in a single grave space "to protect the grave from unlawful and unwarranted desecration."); *Antonitis v. McCormick*, 2 Pa. D. & C.3d 595, 602 (C.P. 1977)(addressing the due consideration owed to rules of the religious organization in issues involving disinterment and reinternment).

[5] *See* 28 Pa. Code § 147.74 (requiring "surgical and obstetrical wastes" to be "incinerated on the premises or disposed of by a method approved by the Department of Environmental Protection and in compliance with local regulations."); 28 Pa. Code § 501.84 (Disposal of placenta by birth centers, described as "[p]athological and bacteriological waste, surgical and obstetrical wastes…); 28 Pa. Code § 147.74 (disposal by hospitals of "[p]athological and bacteriological wastes, surgical and obstetrical wastes.")

matter under the Restatement § 353 that the placenta was produced by Plaintiff's body. *See Mason v. Western Pennsylvania Hospital*, 453 A.2d 974, 979-980 (Pa. 1982) (Nix, J, concurring and dissenting) (where defendant hospital negligently performed a sterilization operation and plaintiff later became pregnant, Justice Nix rejected "the proposition that a reasonable person is likely to become seriously emotionally disturbed by the foiling of his or her choice concerning procreation.")

This Court need not resolve any factual issue as to "foreseeability" to grant Defendants' Amended Motion. Again, the question of whether the promise asserted by Plaintiff to release her placenta posed a particularly likely risk that a breach would result in serious emotional disturbance, is a matter of law to be determined by this Court. *See Castore,* 17 Pa. D. & C.3d at 108; *In re Educ. Testing Serv.,* 517 F. Supp. 2d at 852.

Because there was not a particularly likely risk that a breach of the Patient Specimen Release Form "agreement" would result in serious emotional disturbance as a matter of Pennsylvania law, Plaintiff cannot recover damages for emotional distress and must be precluded from submitting such evidence.

### C. Plaintiff admits that she does not argue emotional distress in her Second Amended Complaint

Plaintiff concedes that she not assert emotional distress in her Complaint. Response, p. 10. She argues that "[a]n injury pleaded as personal, cultural, and spiritual…is not a claim for economic loss alone." *Id.* However, the specific relief requested in Plaintiff's Prayer for Relief against Moving Defendants has nothing to do with injuries that Plaintiff personally experienced physically or emotionally. Rather, Plaintiff seeks compensatory and consequential damages…,in an amount to be determined at trial, based on the unique personal, cultural and spiritual ***value*** of

Ms. Staton's placenta." *Id*., Prayer For Relief, D (emphasis added). The value of an item differs in kind from any alleged emotional distress from its loss.

**D. Plaintiff's argument that the evidence of harm is contemporaneous and corroborated**

Plaintiff's argument that the evidence of harm is contemporaneous and corroborated, and references to the Declaration of Pastor Knight does not present any grounds for denial of Defendants' Amended Motion.

**E. Defendants' request to preclude references to emotional distress is not overbroad**

Because Plaintiff has no claim for emotional distress damages for breach of contract, all evidence of emotional distress must be precluded. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000). The Third Circuit has explicitly stated that where a claim for mental suffering for a breach of contract is not compensable under Pennsylvania law, it is not an abuse of discretion to exclude such evidence.

First, evidence of emotional distress is not relevant. Pursuant to Fed.R.Evid. 401: Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.

Fed.R.Evid. 401. Evidence of Plaintiff's emotional distress would not make any material fact in this matter more or less probable, including facts relevant to her "loss-in-value" theory. Moreover, as set forth in Fed.R.Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403; *United States v. Mims,* No. 4:22-CR-00266, 2026 U.S. Dist. LEXIS 228112, at *4 (M.D. Pa. Oct. 5, 2026)(same). Allowing evidence of

Plaintiff's alleged emotional distress where such a claim is barred under Pennsylvania law, would result in unfair prejudice to Defendants. The jury would also be confused and misled as to what type of damages may be awarded to Plaintiff.

Since Plaintiff cannot assert a claim for emotional distress as a matter of Pennsylvania law, evidence of Plaintiff's alleged emotional distress must be excluded.

## III. CONCLUSION

For all the reasons stated above and in Defendants' Amended Motion, the Court should grant the Amended Motion to Preclude Claim for Emotional Distress Damages Related to Breach of Contract Claim filed by Defendants Jefferson Health-Abington and Jefferson Health Network, and preclude Plaintiff from introducing any evidence with respect to emotional distress damages at trial.

Respectfully submitted,

MARSHALL DENNEHEY, P.C.
BY: *Joseph L. Hoynoski, III*
JOSEPH L. HOYNOSKI, III, ESQUIRE
Attorney ID #94017
620 Freedom Business Center, Suite 405
King of Prussia, PA 19406
Phone: 610-354-8250 / Fax: 610-354-8299
Email: jlhoynoski@mdwcg.com

MARSHALL DENNEHEY, P.C.
BY: *Jeffrey J. Chomko*
JEFFREY J. CHOMKO, ESQUIRE
Attorney ID #54337
2000 Market Street, 23rd Floor
Philadelphia, Pa 19103
Phone: 215-575-2632
Email: jjchomko@mdwcg.com

*Attorneys for Defendants, Jefferson Health-Abington and Jefferson Health Network*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply Brief In Support of Amended Motion to Preclude Claim for Emotional Distress Damages Related to Breach of Contract Claim of Defendants Jefferson Health-Abington and Jefferson Health Network was served via electronic filing and/or email notification upon the following:

Walter A. Bernard, Esquire
Law Offices of Walter A. Bernard
840 1st Avenue, Suite 400
King of Prussia, PA 19406
Walt@walterbernardlaw.com
*Attorney for Plaintiff, Sullena Staton*

MARSHALL DENNEHEY, P.C.

BY: *JOSEPH L. HOYNOSKI, III*
JOSEPH L. HOYNOSKI, III, ESQUIRE
JEFFREY J. CHOMKO, ESQUIRE
Attorney ID #94017/54337
620 Freedom Business Center, Suite 405
King of Prussia, PA 19406
Phone: 610-354-8250
Fax: 610-354-8299
Email: jlhoynoski@mdwcg.com
Attorney for Defendants, Jefferson Health-Abington and Jefferson Health Network

Date: October 9, 2026